LOVE, Admr.; Terrill et al., Appellants and Cross–Appellees,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee; Western Reserve Mutual Insurance Company, Appellee and Cross–Appellant.

[Cite as *Love v. Nationwide Mut. Ins. Co.* (1995), 104 Ohio App.3d 804.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94APE12–1708.

Decided June 22, 1995.

*Graham, McClelland, McCann & Ransbottom Co., L.P.A.,* and *James W. Ransbottom,* for appellants and cross-appellees.

*Lutz & Oxley* and *Fred M. Oxley,* for appellee Nationwide Mutual Insurance Company.

*Wiles, Doucher, Van Buren & Boyle Co., L.P.A., W. Charles Curley* and *Samuel M. Pipino,* for appellee and cross-appellant Western Reserve Mutual Insurance Company.

---

CLOSE, Judge.

This is an appeal from a summary judgment rendered in the Franklin County Court of Common Pleas in favor of defendants-appellees, Nationwide Mutual Insurance Company ("Nationwide") and Western Reserve Mutual Insurance Company ("Western Reserve").

The trial court determined that plaintiffs-appellants, Luann Terrill and Brenda Anderson, were not entitled to underinsured motorist coverage under their own automobile liability insurance policies because the underlying wrongful death claims had been settled and a full release had already been executed. On this basis, the trial court granted appellees' motions for summary judgment and denied appellants' cross-motions for summary judgment.

Appellants raise the following two assignments of error:

"1. The trial court erred in granting the motion for summary judgment of defendants-appellees, and in denying plaintiffs-appellants' motion for summary judgment. * * * [T]he trial court made an error in law by concluding that plaintiffs-appellants, as statutorily presumed injured parties, were not allowed to

recover directly from their own underinsured insurance carriers for their injuries, suffered as a result of the death of their parents, Burdette and Clara Fitzpatrick, on the basis that their parents' Estates' Administrator released and settled the estates' claims against the negligent tortfeasor.

"2. The trial court erred in granting the motion for summary judgment of defendants-appellees, and in denying plaintiffs-appellants' motion for summary judgment. * * * [T]he trial court made an error in law by concluding that plaintiffs-appellants, as statutorily presumed injured parties, were not allowed to recover directly from their own underinsured insurance carriers for their injuries, suffered as a result of the death of their parents, Burdette and Clara Fitzpatrick, on the basis that the plaintiffs-appellants breached the preconditions contained in their own uninsurance policyes [*sic*] to preserve and not waive the defendants-appellees' subrogation rights, if any, when their parents' Estates' Administratrix released and settled the estates' claims against the negligent tortfeasor."

Additionally, appellee Western Reserve has filed a cross-appeal and has raised the following single assignment of error:

"In holding that plaintiffs-appellants were precluded, as a matter of law, from pursuing a claim for underinsured motorist (UIM) benefits on behalf of Brenda Anderson under a policy with defendant-appellee and cross-appellant Western Reserve Mutual Insurance Company, the trial court erred in failing to address and sustain defendant-appellant's argument that such coverage was precluded on the basis of clear, unambiguous and enforceable policy language requiring bodily [injury] to have been 'sustained by an insured.' "

The relevant facts have been stipulated and are, thus, undisputed. Appellants' parents were killed in an automobile accident when the tortfeasor, John W. Sprouse, Jr., went left of center. As relevant here, two of decedents' daughters, both appellants, carried underinsured motorist coverage. Another daughter, Tina Love, was administrator of the decedents' estates. As administrator, Love settled the wrongful death claims against the following three parties: (1) the tortfeasor; (2) the tortfeasor's insurer, Colonial Insurance Company of California; and (3) the decedents' underinsurance carrier, State Automobile Insurance Company. The claims settled in amounts reflecting the policy limits of $12,500 and $25,000, respectively. The probate court approved the settlement, and appellants consented to the settlement and participated in the distribution of the insurance proceeds. Shortly thereafter, the administrator executed a full and final release,

releasing the tortfeasor, his insurer, and the decedents' underinsurer from further liability.

At the time of the accident, appellant Terrill was insured by appellee Nationwide. Her policy included underinsured motorist coverage in the amount of $100,000 per person. Appellant Anderson was insured by appellee Western Reserve. Her policy included underinsured motorist coverage in the amount of $15,000. Approximately two months after the administrator released the tortfeasor and his insurer, appellants Terrill and Anderson submitted underinsured motorists claims against their own policies. Appellees denied coverage, and this action ensued.

Appellants' complaint sought a declaration that appellees' policies afforded underinsured motorist coverage for the harm appellants suffered as a result of their parents' deaths. The administrator was also named a party plaintiff. Appellees moved for summary judgment on the ground that settlement and the execution of a full and final release of the tortfeasor, without appellees' prior notice of the proposed settlement (or even notice of any potential claim), impaired appellees' rights to subrogation and barred appellants' right to recover under the policies. The trial court agreed, granted appellees' motions for summary judgment, and denied appellants' cross-motions for summary judgment.

The assignments of error are related and will be treated together. In sum, appellants assert that they are not bound by the acts of the administrator in settling the wrongful death claims and in releasing the tortfeasor. Consequently, the settlement and final release, appellants allege, did not impair appellees' subrogation rights. In support of this argument, appellants assert that the trial court improperly tied their underinsurance claims to the wrongful death tort action. Appellants believe that, based upon their individual insurance policies, they have a cause of action in contract, separate from the wrongful death tort claims.

Appellants concede, however, that all wrongful deaths in Ohio are controlled by R.C. 2125.01 et seq., and that the administrator or personal representative of the decedent is the sole person authorized to pursue the beneficiaries' claims against the tortfeasor and against any applicable underinsurance of the decedents. Additionally, appellants admit that they cannot independently sue the tortfeasor. Notwithstanding the strictures of R.C. 2125.01 et seq., appellants allege that beneficiaries who have purchased their own underinsurance coverage are entitled, by virtue of the wrongful death, to pursue compensation under their own policies

for their statutorily presumed injuries even after the wrongful death claims have been settled. Moreover, appellants claim that it is "ironic" to enforce the subrogation provision in their insurance policies because appellants "never had and never will have any rights against the tortfeasor * * * regardless of whether the tortfeasor is released or not."

We note initially that summary judgment is warranted only where there are no material questions of fact and the moving parties are entitled to judgment as a matter of law. Civ.R. 56(C). As noted above, the facts are undisputed. The issue, in essence, is whether a beneficiary in a wrongful death action is barred from seeking underinsurance compensation provided in his or her own policy after the administrator of a decedent's estate has settled the wrongful death claims and released the tortfeasor from further liability.

■ The basis of appellees' obligation to appellants lies in the parties' insurance contracts, *Kurent v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 243, 581 N.E.2d 533, 534–535, to the extent the contractual terms are not contrary to the dictates of R.C. 3937.18. *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555.

■ Nationwide's policy promised to provide underinsurance benefits for damages "which are *due by law* to **you** or a **relative** from the owner or driver of an **uninsured** [underinsured] **motor vehicle** because of **bodily injury** suffered by **you** or a **relative**." (Emphasis added; bold print *sic*.)

Western Reserve's policy promised to provide underinsurance benefits for damages which "an **insured** is *legally entitled to recover* from the owner or operator of an **uninsured** [underinsured] **motor vehicle** because of **bodily injury** sustained by an **insured** and caused by an accident." (Emphasis added; bold print *sic*.)

These provisions are consistent with R.C. 3937.18. "The statute itself clearly indicates that the impetus * * * for imposing the uninsured motorist provision is 'for the protection of persons insured thereunder who *are legally entitled to recover damages from* owners or operators of uninsured motor vehicles.'" (Emphasis *sic*.) *York v. State Farm Fire & Cas. Co.* (1980), 64 Ohio St.2d 199, 202, 18 O.O.3d 412, 413, 414 N.E.2d 423, 425.

■ Arguably, appellants are entitled to the underinsurance benefits provided in their policies based upon the Ohio Supreme Court's decisions in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809; *Peace v. Prudential Prop. & Cas. Ins. Co.* (1993), 68 Ohio St.3d 106, 623 N.E.2d 1194; and *Sexton*. Although *Savoie* has been legislatively overruled by Am.Sub.S.B. No. 20, which became effective October 20, 1994, courts have held that this legislative "*Savoie* Amendment" is not retroactive. See *United Servs. Auto. Assn. v. Mack*

(May 17, 1995), Clark App. No. 94–CA–32, unreported, 1995 WL 301437; *Sigmon v. Hatfield* (Mar. 6, 1995), Clermont App. No. CA94–07–054, unreported, 1995 WL 90185, discretionary appeal allowed (1995), 72 Ohio St.3d 1550, 650 N.E.2d 1369; *Beckman v. Prudential Ins. Co.* (1994), 69 Ohio Misc.2d 1, 647 N.E.2d 884. We conclude, however, that any rights appellants may have had under their policies as a result of the wrongful death of their parents terminated with the settlement of the wrongful death claims and the subsequent release of the tortfeasor.

■  Pursuant to R.C. 2125.02(C) of the wrongful death statute, the administrator has the exclusive right to settle with the tortfeasor the amount to be paid. See *Tennant v. State Farm Mut. Ins. Co.* (1991), 81 Ohio App.3d 20, 24, 610 N.E.2d 437, 439, citing *Matz v. Erie–Lackawanna RR. Co.* (1965), 2 Ohio App.2d 136, 141, 31 O.O.2d 241, 244, 207 N.E.2d 250, 253. Absent fraud or other similar ground, a proper settlement, one which is approved by the probate court and which is executed by a court-appointed administrator, as here, is binding upon the beneficiaries and bars any further prosecution of a wrongful death claim. *Tennant*, 81 Ohio App.3d at 24, 610 N.E.2d at 439. In like manner, a general release executed by an administrator binds the beneficiaries of a wrongful death action. *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 110–111, 50 O.O.2d 268, 269–270, 255 N.E.2d 628, 629–630.

■ Appellants' legal entitlement to recovery terminated with the settlement and release because it was premised upon the underlying wrongful death action. Appellants, in fact, assert that their right to underinsurance compensation was triggered by the statutory presumption of damages granted in the wrongful death statute. No additional causes of action or bases for recovery against the tortfeasor have been alleged. Underinsured motorist coverage is dependent on the underinsured motorist's legal liability to the injured person. *Kurent*, 62 Ohio St.3d at 246, 581 N.E.2d at 536–537. While appellees' obligation to appellants lies in the insurance contracts themselves, appellants must still prove they are entitled to damages which the tortfeasor is legally liable to pay. *Kurent* at 246, 581 N.E.2d at 536–537. This, appellants have failed to do.

■ Additionally, both policies required appellants to protect the insurers' subrogation rights. Nationwide's policy expressly provided that:

"The **insured** must:

"a) obtain **our** written consent to:

"(1) settle any legal action brought against any liable party; or

"(2) release any liable party.

"b) preserve and protect our right to subrogate against any liable party." (Bold print *sic.*)

The relevant provisions of the Western Reserve policy provide the following:

"PART C—UNINSURED MOTORISTS COVERAGE

" * * *

"A. We do not provide **Uninsured Motorists Coverage** for **bodily injury** sustained by any person:

" * * *

"4. If that person or that person's legal representative settles the **bodily injury claim** without our consent."

The Western Reserve policy also states:

"PART F—GENERAL PROVISIONS

" * * *

"A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

"1. Whatever is necessary to enable us to exercise our rights; and

"2. Nothing after loss to prejudice them." (Bold print *sic.*)

These provisions are consistent with R.C. 3937.18(E), which expressly recognizes an underinsurer's right of subrogation. Additionally, the Ohio Supreme Court has long upheld subrogation clauses as "a valid and enforceable precondition to [an insurer's] duty to provide underinsured motorist coverage." *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus. That appellants "never have and never will have any rights against the tortfeasor" is immaterial. The right of subrogation is a "full and present right in and of itself wholly independent" of any alleged lack of prejudice from the failure of an insured to protect the insurer's subrogation rights. *Id.* at 31, 521 N.E.2d at 455.

Appellants' assignments of error are, therefore, overruled.

Given our disposition above, it is unnecessary to address the assignment of error raised in Western Reserve's cross-appeal. This assignment of error is rendered moot.

Appellants' assignments of error are overruled, cross-appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETREE and DESHLER, JJ., concur.